# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

No. 5:13-cr-00070-D-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| DONNIE RAY COX, JR. | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| Defendant. | ) | |

Defendant Donnie Ray Cox, Jr. ("Defendant") filed the instant pro se motion for compassionate release, his third such motion, based on (1) his current conditions of confinement and health condition, hypertension and hyperlipidemia, which he claims the Bureau of Prisons (BOP) has been deliberately indifferent to his medical needs, (2) that he has served an unusually long sentence, (3) his sentence was a result of entrapment, and (4) there exist a disparity in his sentence compared to other defendants. [D.E. 191 at 12–25]. The Court should deny Defendant's motion because Defendant has failed to demonstrate extraordinary and compelling reasons warrant a reduction in his sentence considering the BOP adequately manages his medical condition, Defendant's sentence is based upon the status as a career offender, his entrapment claim is not cognizable as a basis for compassionate release, and the Section 3553(a) factors weigh heavily against reducing Defendant's sentence.

# I.     BACKGROUND

## A.     Facts and Procedural History.

### 1.     Defendant's Current Status.

Defendant is 52 years old and currently in custody of Talladega FCI with an expected release date of July 8, 2029. *See* [https://www.bop.gov/inmateloc/; register number: 22065-056; last visited April 11, 2026].

### 2.     Criminal Conduct.

According to Defendant's Presentence Investigation Report (PSR), from December 2012, and February 13, 2013, Defendant contacted a Drug Enforcement Administration undercover agent posing as a Laredo, Texas controlled substances source of supply using a social media network, "Mocospace." [D.E. 44, ¶ 6]. The evidence shows Defendant and the undercover agent negotiated over text and in recorded phone calls for the undercover agent to sell Defendant 5 kilograms of cocaine. *Id*. In March 2013, Defendant, Carlos Lamar Harris (Harris), and Christine Lynn Herrera (Herera) were named in an indictment that charged them with conspiring with each other and others unknown to possess with intent to distribute and to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. [D.E. 15]; *see also* [D.E. 44, ¶¶ 6-12 (offense conduct showing Defendant directed Herrera, his girlfriend, to meet with the undercover agent to examine the cocaine, and that Harris acted as Defendant's driver on the date Defendant and Harris were to meet with another undercover agent to take possession of the cocaine)].

On May 21, 2013, Defendant pleaded guilty to the conspiracy charge. [D.E. 37, D.E. 39].

On January 16, 2014, the Court sentenced Defendant to 228 months' imprisonment, 5 years' supervised release, and a $100 special assessment. [D.E. 100, D.E. 102]. At the outset, Defendant withdrew his objections to the PSR and the parties agreed that the advisory guideline range was 262–327 months' imprisonment. [D.E. 132 at 4–6]. The Government then informed the Court of information favorable to Defendant. *Id*. at 5–8. Although the Court acknowledged the information favorable information, the Court noted that it was "deeply troubled by [Defendant's] life and his crimes." [D.E. 132 at 8–9]. The Court further observed that Defendant was "40 years old" and based on the PSR it could not "see anything positive that he's ever contributed to society." [D.E. 132 at 9]. And that Defendant was "a life-long drug dealer and essentially someone who has never contributed in any positive way ever to this world. That is the life story of Donnie Ray Cox, Junior, it seems to me." *Id*. at 9. The Court said that based on Defendant's "terrible record," including a prior federal offense, "I don't think he'll ever change. It's just a question of how long should we protect society from Donnie Ray Cox, because society needs to be protected from him. He just doesn't get it, doesn't care, thinks he's above the law." *Id*.

The Court then heard from the Government. The Government requested that the Court sentence Defendant to 176 months' imprisonment. *Id*. at 17–20. Defendant concurred with the Government's recommendation. *Id*. at 20. The Court then conducted a thorough review of the sentencing factors set out in 18 U.S.C. § 3553(a)

3

and at the conclusion of its analysis, it rejected the parties' joint recommendation and sentenced Defendant to 228 months' imprisonment, 5 years' supervised release, and a $100 special assessment. *Id*. at 9–27. In addition, the Court said that even if it erred in its calculation of the advisory guideline range, it would have imposed the same sentence as an alternative variant sentence. *Id*. at 27.

On January 16, 2014, the Court also sentenced codefendant Harris to 15 months' imprisonment, 5 years' of supervised release, and ordered Harris to pay a $100 special assessment. [D.E. 101]. Prior to sentencing codefendant Harris filed a sentencing memorandum in which he argued, among other factors, that he was eligible for safety valve under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 based on his minimal criminal history, and he did not use violence or threats of violence in the offense, neither death nor serious bodily injury resulting from the offense, that he was not an organizer or leader, and they provided the government with all information concerning the offense. [D.E. 87 at 6–7].

On April 29, 2014, the Court sentenced codefendant Herrera to 84 months' imprisonment, 3 years' of supervised release, and ordered her to pay a $100 special assessment. [D.E. 123]. Like codefendant Harris, codefendant Herrera filed a sentencing memorandum prior to sentencing in which she cited, among other factors, her minimal criminal history as a basis for reduced sentence. [D.E. 121 at 5].

### 3. Criminal History.

Defendant has a serious criminal history. The U.S. Probation Office found that based on Defendant's criminal history Defendant was a career offender and that his advisory guideline range was 262 to 327 months' imprisonment. [DE 44, ¶¶ 38, 75].

Defendant's convictions include a 1992 conviction for selling cocaine for which he received a suspended 3-year term of imprisonment, and 5 years' probation. [D.E. 44, ¶ 18]. The state court revoked Defendant's probation for repeated violations and he served the term of imprisonment. *Id.*

In 1993, Defendant was convicted of possession with intent to sell cocaine, received another suspended 3-year term of imprisonment, and 3 years' probation. [D.E. 44, ¶ 19]. The state court revoked Defendant's probation and he served the term of imprisonment and was released from imprisonment on March 14, 1994. *Id.*

In 1997, Defendant was convicted of possession with the intent to sell marijuana and possession of cocaine. [D.E. 44, ¶ 23]. He received a suspended 6-to-8-month term of imprisonment, and 18 months' probation. *Id.* The state court revoked his probation and he served the term of imprisonment before he was released from imprisonment on January 31, 1999. *Id.*

In 2001, Defendant was convicted of possession with intent to sell marijuana and possession with intent to sell cocaine. [D.E. 44, ¶¶ 30-31]. Defendant was sentenced to 11–14 months' imprisonment and 3 years' probation. *Id.*

In September 2002, Defendant was convicted in federal court of conspiracy to distribute more than 50 grams of cocaine base (crack) and 500 grams of cocaine. [D.E.

44, ¶ 34]. The Court sentenced him to 84 months' imprisonment and 60 months' supervised release. *Id*. The Court revoked his supervision for failing to report to his probation officer as directed, failing to complete his monthly reports, absconding from supervision, and engaging in new criminal conduct. *Id*. As a result, Defendant served an added 27 months' imprisonment. *Id*. Defendant was released on April 20, 2011. *Id*.

### 4. Prison infractions.

Defendant has incurred multiple disciplinary infractions during his time in custody, including an August 26, 2024 sanctioned incident for using drugs/alcohol, a December 23, 2021 infraction for fighting with another inmate, and a May 7, 2021 infraction for possessing an unauthorized item, all such infractions committed after Defendant filed his first motion for compassionate release. Exhibit 1 - Inmate Discipline Record at 1; *see also* Motion for Compassionate Release [D.E. 157] (filed November 2020). Defendant's remaining infraction occurred in 2007 for engaging in a sexual act during a visitation. Exhibit 1 - Inmate Discipline Record at 2.

### 5. Relevant Medical History.

Defendant's current medical records show that his health problems include diagnosed high cholesterol for which he has been prescribed Atorvastatin, and hypertension for which he has been prescribed Hydrochlorothiazide and has been counseled regarding his medication compliance, and Lisinorpril. Exhibit 2 – Medical Records at Bates 2, 9–10, 18, 25. Further, the BOP has provided Defendant with alternate institutional shoes, educated Defendant on his prescribed medications,

6

performed vision testing and provided him with eyeglasses, and vaccinated Defendant against influenza. *Id*. at Bates 15, 17, 21–24, 30.

Defendant's medical records also show that on January 28, 2026, Defendant refused to report for routine blood work and therefore BOP canceled testing to establish a comprehensive metabolic profile. *Id*. at Bates 1; *see also* Bates 27, 29 (medical treatment refusal form that Defendant refused to sign).

### B. Defendant's Requests for Compassionate Release

This is not Defendant's first request for compassionate release. On November 13, 2020, Defendant filed a motion asking this Court to grant Defendant compassionate release in light of the COVID-19 pandemic. [D.E. 157]. The Government responded in opposition and the Court denied Defendant's motion. [D.E. 167, D.E. 172].

Defendant filed a second motion for compassionate release on September 6, 2023, arguing under the then-newly adopted amendments to U.S.S.G. § lBl.13 he had served more than 10 years imprisonment and if sentenced in September 2023 the Court would have sentenced him to a lesser sentence. [D.E. 179 at 11]. Further, Defendant argued the 18 U.S.C. § 3553(a) factors favored granting his motion. *Id*. at 12–13. Appointed counsel then filed a sealed memorandum in support of Defendant's motion. [D.E. 182]. On November 21, 2023, Defendant withdrew the motion for compassionate release, and the Court granted the motion. [D.E. 187, D.E. 188].

Defendant filed his third and latest motion for compassionate release on November 25, 2024. [D.E. 191]. Defendant now asserts compassionate release is

7

warranted based on: (1) his claims that BOP has been deliberately indifferent to his medical condition, hypertension and hyperlipidemia, (2) his unusually long sentence, (3) that his sentence was a result of entrapment, and (4) there exist a sentencing disparity between his sentence as compared to other defendants. [D.E. 191 at 12–25]. Defendant also filed a document characterized as a motion for compassionate release in which he requested an update on his November 2024 motion for compassionate release and a letter in support of his motion for compassionate release. [D.E. 192, D.E. 192-1].

## II.    ARGUMENT

### A.    Legal Standard.

In the First Step Act of 2018, Congress amended Section 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. See Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, Section 3582(c)(1)(A) now states:

> [t]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after the warden receives his

request, regardless of whether the defendant exhausted his administrative remedies." *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

To gain relief based on compassionate relief, a prisoner must demonstrate "extraordinary and compelling reasons" warrant the requested relief. *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024). If the Court finds extraordinary and compelling reasons exist for a modification in the prisoner's sentence, it must then evaluate the relevant Section 3553(a) factors. *Id.* Further, the Court must find that a reduction in the prisoner's sentence "'is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025) (quoting Section 3582(c)(1) – (2)). A defendant who seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing that such relief is warranted. *Centeno-Morales*, 90 F.4th at 279. ("A movant for compassionate release bears the burden of showing why the § 3553(a) factors justify a modified sentence.").

Moreover, "§ 3582(c)(1)(A)(i) [sets] an exceptionally high standard for relief." *United States v. McCoy*, 981 F.3d 271, 288 (4th Cir. 2020). "[T]he very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *McCoy*, 981 F.3d at 287. Congress intended for relief under this statute to be limited "to truly extraordinary and compelling cases." *Id.*

The statute does not define what constitutes an extraordinary and compelling

reason to reduce a defendant's sentence under § 3582(c)(1) (A). Instead, "[u]nder 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define 'what should be considered extraordinary and compelling reasons for sentence reduction' under § 3582(c)(1)(A)." *United States v. Cunningham*, 556 F. Supp. 3d 553, 555 (D. Md. 2021) (quoting 28 U.S.C. § 994(t)). The United States Sentencing Commission, Guidelines Manual § 1B1.13(b)'s policy statement defines "extraordinary and compelling reasons" as "any of" six individual circumstances or "a combination thereof:" (1) Medical Circumstances, (2) Age, (3) Family Circumstances, (4) Victim of Abuse (sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim) or physical abuse resulting in "serious bodily injury," as defined in the Commentary to §1B1.1 (Application Instructions), (5) Other Reasons (any other circumstance or combination of circumstances that when considered by themselves or considered together with medical circumstances, age, family circumstances, or victim of abuse are similar gravity to those circumstances), and (6) Unusually Long Sentence. U.S.S.G. § 1B1.13 (b) (1) – (6).

Amendments to the Guideline Manual in 2023 also allow, with certain limitations, consideration of changes in law—including ones Congress has chosen not to make retroactive—when determining whether a defendant has presented an extraordinary and compelling reason for a sentence reduction. That change is reflected in subsections (b)(6) and (c), which provide:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of

imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. 28,254, 28,254-28,255 (May 3, 2023); U.S.S.G. §§ 1B1.13(b)(6) and (c).

The Department of Justice maintains § 1B1.13(b)(6) is not a valid basis for compassionate release as it exceeds the Commission's statutory authority. The Commission divided 4-3 on whether to promulgate the amendments to Section 1B1.13. *See* Sentencing Commission Public Meeting Tr. 81–82 (Apr. 5, 2023). The dissenting Commissioners explained that, in their view, the policy statement "goes further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." *Id.* at 60 (Commissioner Wong, delivering joint statement). In particular, the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that

11

Congress did not wish to make retroactive." *Id.* at 60-61. "The separation of powers problem" with that result, the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments." *Id.* at 61; *but see United States v. Fields*, No. 5:12-CR-00002, 2024 WL 4520353 at *9 (W.D. Va. Oct. 17, 2024) (analyzing the Government's argument that Congress exceeded its statutory authority and finding the Fourth Circuit Court of Appeals in *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024), "implicitly found that §§ 1B1.13(b)(6) and (c) resulted from an appropriate exercise of the Commission's authority when it applied the policy statement to find that a gross disparity between an original sentence and the sentence the defendant likely would receive today can be an extraordinary and compelling reason warranting compassionate release.").

"Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Although rehabilitation by itself is not an extraordinary and compelling reason to reduce a defendant's sentence under § 3582(c)(1)(A), it may be considered in combination with other circumstances. U.S.S.G. § 1B1.13 (d), p.s.

### B. Defendant's sentence should remain the same based on the totality of the circumstances.

The Court should deny Defendant's motion because Defendant has failed to demonstrate extraordinary and compelling reasons exists warranting a reduction in his sentence. Further, even if such factor existed, the § 3553(a) factors weigh heavily against reducing Defendant's sentence.

**1. Defendant fails to demonstrate an "extraordinary and compelling" reason to justify a sentence reduction.**

Defendant claims as a basis for the relief he seeks: (1) the BOP has been deliberately indifferent to his health condition, which includes hypertension and hyperlipidemia, (2) that he has served an unusually long sentence, (3) that his sentence was a result of entrapment, and (4) there exist a disparity in his sentence compared to other defendants. [D.E. 191 at 12–25]. The Court should deny Defendant's motion because he has failed to demonstrate extraordinary and compelling reasons to justify reducing his sentence.[*]

**a. Medical treatment claim.**

Under U.S.S.G. § 1B1.13(b)(1)(C), "extraordinary and compelling reasons" related to medical circumstances exist where a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). As noted in *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019), "most courts treat compassionate release" based on medical circumstances as "a rare event." *Id.* Where the conditions complained of are chronic, as here, and can be managed in prisons there is not sufficient basis for compassionate release because the conditions do not affect an inmate's ability to provide self-care. *United States v. Bailey*, No. 1:11-CR-00010-MR, 2024 WL 589118

---

[*]As a threshold matter, the Government does not contest Defendant has satisfied the administrative remedies requirement under Section 3582(c)(1)(A).

at *2 (W.D.N.C. Feb. 13, 2024), *aff'd*, No. 24-6191, 2024 WL 2575901 (4th Cir. May 24, 2024).

A review of Defendant's current medical records reveals Defendant's chronic medical conditions are managed in the BOP and Defendant has failed to fully comply with prescribed treatment and refused critical medical testing, undercutting his claim of inadequate medical treatment. Exhibit 2 – Medical Records at Bates 1, 27, 29. As such, Defendant has failed to show his health condition is an extraordinary and compelling basis for to reduce his sentence.

### b. Unusually long sentence and disparity claims.

Defendant argues that he has already served over a decade of his sentence and that it has "taken a significant told physically, mentally, and emotionally." [D.E. 191 at 18]. Defendant further states that such lengthy incarceration "often leads to isolation from family and community, diminishing the inmates chances of successful reintegration." *Id*. And that because he has served "such an unusually Long sentence" he "has endured the *full punitive intent of the unjustifiable sentence* and has faced conditions that inherently come with time served in prison, including limited autonomy, restricted healthcare access, and the social and psychological impact of prolonged confinement." *Id*. (emphasis added). Defendant further argues that a disparity between his sentence and that of his codefendants also serves as an extraordinary and compelling reason to reduce his sentence and had the Court sentenced him today, Defendant would have received a lesser sentence. *Id*. at 21–25

14

Defendant's argument is without merit because Defendant was sentenced as a result of his status as a career offender. The argument also fails because in sentencing Defendant to a 228-month term of imprisonment, the Court stated it also imposed the sentence as an alternate sentence. As such, Defendant has failed to carry his burden to prove his sentence was unusually long.

### c. Entrapment claim as a basis for a reduction in sentence.

Defendant also argues that his "conviction rests on actions initiated and largely orchestrated by law enforcement which point strongly toward entrapment." [D.E. 191 at 19]. Defendant claims the use of a police informant led to the forming of his conspiracy with his codefendants and that it pressured him "to participate in activities that he would not have pursued independently" and this "demonstrate[s] that he was manipulated into involvement rather than being predisposed to commit the crime." [D.E. 191 at 19]. In so arguing Defendant attacks the validity of his sentence and this he cannot do in a motion for compassionate release under Section 3582(c)(1)(A) because only a motion to vacate under 28 U.S.C. § 2255, the federal habeas statue, is the "'exclusive method' for doing so." *United States v. Moody*, 115 F.4th 304, 312 (4th Cir. 2024). As such, Defendant has failed to carry his burden to show the Court should grant him compassionate release on this claim.

### 2. The § 3553(a) factors weigh heavily against reducing Defendant's sentence and his motion should be denied.

"[A] district court may not grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) without 'considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021).

15

Here, to reduce Defendant's sentence to any degree would minimize the scope of Defendant's criminal activity and fail to protect the public. Defendant is a career offender was multiple felony convictions included a federal conviction and that violation. Moreover, at sentencing the Court noted Defendant was "a life-long drug dealer and essentially someone who has never contributed in any positive way ever to this world. That is the life story of Donnie Ray Cox, Junior, it seems to me." [D.E. 132 at 9]. Importantly, Defendant's motion shows that after multiple felony convictions, including a second federal conviction, Defendant has not internalized the need to conform his unlawful behavior as evidenced by prison rule infractions he committed after filing the previous motion for compassionate release and his characterization of his sentence in the instant motion for compassionate release as "unjustifiable." As such, Defendant has failed to carry his burden to show the applicable Section 3553(a) factors weigh in his favor to reduce his sentence and his motion for compassionate release [D.E. 191] and to the extent his motion for compassionate release [D.E. 192] supplements his claim, the Court should deny both motions.

### III.  CONCLUSION

For all the reasons stated herein and at sentencing, the Court should deny Defendant's motion for compassionate release.

Respectfully submitted this 16th day of April 2026.

W. ELLIS BOYLE
United States Attorney

*/s/ Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
U. S. Attorney's Office
Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
E-mail: mike.james@usdoj.gov
N.Y. Reg. No. 248141
Attorney for United States of America

17

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that I have on this 16th day of April 2026 electronically filed via CM/ECF the Government's Response in Opposition to Defendant's Motions for Compassionate Release [D.E. 191, D.E. 192] and that based on the time of filing the Government's response, a designee shall serve a copy of the foregoing Response in Opposition upon Defendant on the 17th day of April 2026 by placing a copy of said response in the United States Mail addressed to:

Donnie Ray Cox, Jr.  (22065-056)
FCI Talladega
Federal Correctional Institution
P. M. B. Box 1000
Talladega, AL  35160

W. ELLIS BOYLE
United States Attorney

*/s/ Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
U. S. Attorney's Office
Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
E-mail: mike.james@usdoj.gov
N.Y. Reg. No. 248141
Attorney for United States of America